United States Court of Appeals,

Fifth Circuit.

No. 96-20728.

In re GRAND JURY PROCEEDINGS.

June 26, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

## I. BACKGROUND

Faced with a request to quash a grand jury subpoena, the federal district court in Houston was apprised that two months earlier, the movants' premises had been searched in Colorado under a warrant with a sealed supporting affidavit. The district court disagreed philosophically that a search could be so conducted. Consequently, although the movants never objected to the search, the court went them one better on relief from the grand jury subpoena. He ordered that unless the search warrant affidavit was unsealed, he would suppress the evidence from the search. The government has appealed. Because this order lacks supporting authority and, indeed, flouts the governing procedures for contest of search warrants and grand jury subpoenas, we reverse.

On May 6, 1996, the United States Attorney for the Southern District of Texas requested two grand jury subpoenas, to be served on two Colorado organizations, Pro Vantage One International, L.L.C., and Pro Vantage One (collectively, "Pro Vantage"), requiring them to produce documents and appear before a Houston,

1

Texas federal grand jury.  In connection with the grand jury investigation, the government also applied to a federal magistrate judge in Colorado for a search warrant.  The magistrate judge promptly issued the warrant, which was executed on May 15 at a house in Colorado.  The printed search warrant form completed by the government did not list the objects of the search.  Instead, the form stated:

> [T]here is now concealed a certain person or property, namely (describe the person or property)

> PLEASE SEE AFFIDAVIT

The only attachment described the premises with a photograph of the building to be searched.  By request of the government, the Colorado magistrate judge sealed the application and affidavit supporting the search warrant except to law enforcement officials.  Thus, Pro Vantage never received the affidavit that listed the objects of the search in the warrant.  After a large volume of documents was seized pursuant to the warrant, however, Pro Vantage was given an inventory.

On July 25, Pro Vantage One International, L.L.C. and its manager Thomas Kiser ("Appellees") moved to quash the grand jury subpoenas in the Southern District of Texas, arguing that the subpoenas are impermissibly overbroad and lacking in particularity in violation of the Fourth Amendment, and that by serving subpoenas simultaneously with search warrants, the government was seizing Appellees' papers and effects without having to show the probable cause that a search warrant would require.

The federal district court held a hearing on this motion,

during which the court requested to see the sealed affidavit that the government had filed in the Colorado federal court pursuant to its FED. R. CRIM. P. 41 search warrant application. The court reviewed the affidavit *in camera.* A day later, he ordered the government to disclose the search warrant affidavit to Appellees. That August 2nd order also stated that the scope of the subpoena was "excessive on the basis of the affidavit," and required the government to revise its description of the documents being sought by subpoena. Responding to the government's motion to reconsider, the court entered another order on August 7, which stated in part: "the government must disclose the affidavit supporting the search warrant by noon, Friday, August 9, 1996, or all the evidence from the search will be suppressed." The district court reiterated this demand in an accompanying Opinion on Search Warrant issued on August 7, 1996. This court stayed the district court's order pending appeal.

## II. STANDARD OF REVIEW

We review subject matter jurisdiction *de novo* as a question of law. *DeCell & Assoc. v. Federal Deposit Ins. Corp.,* 36 F.3d 464, 467 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 2275, 132 L.Ed.2d 279 (1995). We review a district court's decision granting a motion to quash or modify a subpoena for abuse of discretion. *See Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 112 (5th Cir.1994). We review a district court's rulings on a motion to suppress under the clearly erroneous standard for findings of fact, and *de novo* for issues of law, viewing evidence in the light most

3

favorable to the prevailing party.  *United States v. Brown,* 102 F.3d 1390, 1394 (5th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 1455, --- L.Ed.2d ---- (1997).

We have jurisdiction over a district court order quashing or modifying a grand jury subpoena pursuant to 18 U.S.C. § 3731.  *See In re Grand Jury Subpoena,* 646 F.2d 963, 967 (5th Cir.1981).  We also have jurisdiction over a preindictment conditional suppression order pursuant to 18 U.S.C. § 3731.  *See United States v. Ramirez-Gonzalez,* 87 F.3d 712, 713 (5th Cir.1996) (stating that court had jurisdiction over appeal of suppression order before jeopardy attached under 18 U.S.C. § 3731);  *United States v. Presser,* 844 F.2d 1275, 1279-80 (6th Cir.1988) (finding appellate jurisdiction under 18 U.S.C. § 3731 for a government appeal of a discovery order when suppression of evidence was threatened for noncompliance);  *United States v. Horwitz,* 622 F.2d 1101, 1104-05 (2d Cir.1980), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981) (concluding that government could immediately appeal a conditional suppression order under 18 U.S.C. § 3731).

## III. ANALYSIS

1. Order to Revise Grand Jury Subpoenas.

The only issue properly before the district court in Houston was Appellees' motion to quash the grand jury subpoenas.  Appellees did not challenge the Colorado search based on Fourth Amendment grounds or pursuant to Fed. Rule Crim. Proc. 41(e), but rather argued that the documents requested by the subpoenas might be the same as those seized during the search, and that the subpoenas (not

4

the *warrants* ) were overbroad and lacking in particularity. Although the district court reviewed the search warrant affidavit *in camera,* the government never filed the sealed affidavit with the district court, and the government urged that it did not need to establish probable cause to support a grand jury subpoena. Thus, the subpoena alone, and not the search warrant, was properly before the court.

In general, courts have very little authority over the proceedings of a grand jury. As the Supreme Court has observed, "the grand jury is an institution separate from the courts, over whose functioning the courts do not preside." *United States v. Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992). Further, "[j]udges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office." *Id.* These cautions frame the first issue, whether there was any ground for the district court, in its August 2 order, to find that the scope of the subpoena was excessive and to require the government to modify the subpoena by revising the list of documents being sought.

In examining a grand jury subpoena, a court considers whether compliance "would be unreasonable or oppressive." *See* FED. R. CRIM. P. 17(c); *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 299, 111 S.Ct. 722, 727, 112 L.Ed.2d 795 (1991). The law presumes, however, that "absent a strong showing to the contrary, ... a grand jury acts within the legitimate scope of its

5

authority." *Id.* at 301, 111 S.Ct. at 728. Moreover, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id.*

The Appellees have failed to meet their burden. In their Motion to Quash Subpoenas to Testify Before Grand Jury, Appellees objected to the grand jury subpoenas on three grounds. First, they argued that certain items which the subpoenas required the Appellees to produce may have already been seized pursuant to the search warrant; they asserted they were hampered from confirming this by the sealing of the warrant affidavit. This complaint proves nothing in terms of unreasonableness or oppression. Appellees received a written inventory of the documents seized. Rather than seeking to quash the subpoenas, the Appellees could state to the grand jury that the documents are now in the government's possession. Appellees' administrative compliance problem is not the courts' business.

Second, Appellees contended that the subpoenas were overbroad and lacking in particularity, in violation of their Fourth Amendment right to be free of unreasonable searches and seizures. A subpoena *duces tecum* is not itself a search or seizure, however, and the actual search that occurred on May 15, 1996 was conducted pursuant to a search warrant. Thus, Appellees' argument conflates a grand jury subpoena with a magistrate judge's search warrant. But the instruments are different in nature and issued from different authorities. Even if this court were to construe

6

Appellees' argument as an assertion that compliance with the subpoena would be unreasonable or oppressive, Appellees have failed to make the requisite showing. Appellees cite that the subpoena requested at least eighty-five kinds of documents relating to approximately one hundred and seventy-eight different persons and entities, but they do not explain how, if at all, production of the documents unreasonably burdens them. Simply citing the types of information sought by the government does not alone constitute a "strong showing" sufficient to counter the presumption that the grand jury was acting within the proper scope of its authority.

Third, Appellees asserted that because the subpoenas were issued simultaneously with a search warrant, they evidenced an attempt to seize and secure items belonging to the Appellees without showing probable cause for the issuance of a search warrant. This argument is a red herring; even if the search warrant was defective, there is no probable cause requirement for the issuance of a grand jury subpoena. *R. Enterprises,* 498 U.S. at 297, 111 S.Ct. at 726. Issues of probable cause relate solely to the validity of the search warrant, not the subpoenas.

For all these reasons Appellees failed to meet the standards of FED. R. CRIM. P. 17(c); therefore, the district court abused its discretion in ordering that the subpoenas be modified by revising the list of the documents being sought.

2. Order to Unseal Search Warrant Affidavit/Conditional Order to
    Suppress.

The government also appeals Judge Hughes's actions in going beyond the motion to quash and granting, *sua sponte,* a conditional

7

suppression order mandating that the government produce the sealed affidavit "or all the evidence from the search w[ould] be suppressed."  This order was problematic for several reasons.  Most important, Appellees never contested the search warrant based on the Fourth Amendment;  instead, they challenged the grand jury subpoenas.  Appellees, however, had the burden of affirmatively challenging the search warrant based on Fourth Amendment grounds:

> In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon defendants in federal prosecutions the right, *upon motion and proof,* to have excluded from trial evidence which had been secured by means of an unlawful search and seizure....  However, we have also held that rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence *only at the instance of one whose own protection was infringed by the search and seizure.*

*Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968) (emphasis added).  Because the Fourth Amendment right must be affirmatively asserted, Judge Hughes erred in fashioning a suppression order in the absence of a motion by Appellees requesting such relief.

But even if Appellees had sought relief for the search and seizure, the Southern District of Texas was not the appropriate preindictment forum in which to proceed.  The Federal Rules of Criminal Procedure govern these issues.  FED. R. CRIM. P. 41(e) states:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court *for the district in which the property was seized* for the return of the property on the ground that such person is entitled to lawful possession of the property....  If a motion for return of property is made or comes on for hearing *in the district of trial after an indictment or information is filed,* it shall be

8

treated also as a motion to suppress under Rule 12 (emphasis added).

Rule 41(e) specifies that an aggrieved party's preindictment remedy is a motion for the return of property, which should be filed in the district in which the property was seized—in this case the District of Colorado. Rule 41(f), on the other hand, states:

A motion to suppress evidence may be made *in the court of the district of trial* as provided in Rule 12.

(emphasis added). The court of the district of trial cannot be determined prior to an indictment.

A district court in the Eighth Circuit recognized the limits imposed by Rule 41. *In re Grand Jury Proceedings,* 466 F.Supp. 863 (D.C.Minn.1979), *aff'd as modified by* 629 F.2d 548 (8th Cir.1980). In *Grand Jury Proceedings,* the potential corporate defendant sought a preindictment motion to suppress in a district court in the district where the trial would be held if a grand jury indicted the company. The district court concluded that it was not the proper court to rule on the legality of the seizure prior to indictment, observing: "This court is located in the district where any future criminal trials probably would occur, but *it is not the trial court.* If any indictments are handed down, there is no guarantee that this court, rather than other courts in this district, would be assigned the resulting criminal trials.... Moreover, Rule 41(e) contains no express authorization for this court to rule prior to indictment." *Id.* at 866 (emphasis added).[1] The same logic applies

---

[1]Appellees inexplicably cite this case for the proposition that a district court that is not in the district of seizure has jurisdiction to decide a *preindictment* Rule 41(e) motion. *Grand*

9

here.  Judge Hughes's court is not a court in the district in which Appellees' property was seized, nor will it necessarily be the trial court, if ProVantage and Kiser are ever indicted.  Thus, the Federal Rules did not authorize this court to rule on a motion to suppress at the preindictment stage.  Rules 41(e) and (f) together provide that Appellees' only remedy for the search and seizure prior to indictment was to seek a Rule 41(e) motion for the return of property in the District of Colorado—an option they ignored.  Nevertheless, Appellees are not left unprotected.  If they are indicted, Appellees may move to suppress in the trial court, whatever court that may be.

Appellees have not defended the court's order to unseal the search warrant affidavit on the basis of the Federal Rules.  Instead, they urge various bases for his inherent authority to act.  Appellees principally rely on an amorphous theory called anomalous jurisdiction.  Anomalous jurisdiction was expressly recognized by this court in *Hunsucker v. Phinney,* 497 F.2d 29 (5th Cir.1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975):

> A substantial body of precedent establishes that federal district courts have power to order the suppression or return of unlawfully seized property even though no indictment has

*Jury* stands for precisely the opposite proposition.  Appellees also cite *Ex Parte Decious,* 622 F.Supp. 40 (E.D.N.Y.), *appeal dismissed,* 779 F.2d 35 (2d Cir.1985) to support their proposition, even though the *Decious* court (which was in the district of seizure), in declining to exercise jurisdiction over the Rule 41(e) motion, noted that the movants still retained the right "to make a suppression motion in any district court *where a trial is pending."* *Id.* at 41 (emphasis added).  This reasoning expressly contemplates that the movants' only potential remedy, once a district of seizure court declines to exercise jurisdiction over the Rule 41(e) motion, lies in a trial court after indictment.

been returned and thus no criminal prosecution is yet in existence.... The theory articulated by most of the cases is that jurisdiction to order suppression or return prior to indictment exists not by virtue of any statute but rather derives from the inherent authority of the court over those who are its officers.

*Id.* at 32. Despite this court's recognition of anomalous jurisdiction, it has rarely been invoked or discussed since *Hunsucker,* and its very existence has been questioned.[2] Several considerations lead us to conclude the district court's attempt to exercise this jurisdiction, if it exists, was inappropriate.

In *Richey v. Smith,* 515 F.2d 1239 (5th Cir.1975), this court listed the factors a court should consider in deciding whether to exercise anomalous jurisdiction: whether the government displayed "a callous disregard for the constitutional rights of the [plaintiff];" "whether the plaintiff has an individual interest in and need for the material whose return he seeks; whether the plaintiff would be irreparably injured by denial of the return of the property; and whether the plaintiff has an adequate remedy at law for the redress of his grievance." *Id.* at 1243-44 (citations

--------

[2]Only five other decisions in this circuit have discussed this doctrine, even in passing. *See In re Grand Jury Proceedings,* 724 F.2d 1157, 1160 (5th Cir.1984) (holding that the appellate court lacked jurisdiction to entertain the appeal of an order denying a motion for the return of property that was based on anomalous jurisdiction); *Linn v. Chivatero,* 714 F.2d 1278, 1281 (5th Cir.1983) (questioning whether the doctrine of anomalous jurisdiction survived the repeal of the amount-in-controversy requirement of 28 U.S.C. § 1331); *United States v. Chapman,* 559 F.2d 402, 406 (5th Cir.1977) (discussing equitable factors justifying the use of anomalous jurisdiction); *Mason v. Pulliam,* 557 F.2d 426, 428 (5th Cir.1977) (affirming the district court's exercise and discussion of anomalous jurisdiction); *Richey v. Smith,* 515 F.2d 1239, 1243-44 (5th Cir.1975) (discussing the basis and rationale for anomalous jurisdiction).

and internal quotations omitted).  The district court articulated none of these factors, and they are not conducive to the result Appellees seek.

First, while this court has not yet determined whether the issuance of a search warrant combined with a sealed affidavit constitutes a violation of the Fourth Amendment, the Seventh Circuit has expressly affirmed the practice.  *See In re Eyecare Physicians of America,* 100 F.3d 514, 516 (7th Cir.1996).  The Seventh Circuit observed that "no provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment." *Id.* at 517.  This court ordinarily abides by the decisions of our sister circuits, and we do so with respect to this sensible decision.  Accordingly government did not display "callous disregard" of Appellees' rights.

The next two factors promoting anomalous jurisdiction are likewise unsatisfied.  Appellees have neither explained their specific interest in and need for the documents seized pursuant to the warrant, nor have they stated how they will be irreparably injured by denial of the return of the property.  Appellees have not indicated, for example, whether they requested a copy of the documents seized, and whether the government refused to comply with such a request.  *See, e.g., Eyecare Physicians,* 100 F.3d at 515 (noting that the government offered to provide appellant with copies of the seized documents).  The absence of any showing of necessity or irreparable injury weigh against the exercise of

anomalous jurisdiction.

Finally, unlike the situation in *Richey,*[3] these Appellees have an adequate remedy at law.  They failed to avail themselves of the preindictment remedy provided by Rule 41(e) in the Colorado federal court.  Such a motion, if granted, might well have affected the government's decision whether to continue seeking an indictment.  Thus, this also was not a situation in which Appellees possessed no opportunity to avoid the stigma of a criminal indictment.  *See Richey,* 515 F.2d at 1243, n. 10 (observing that "where examination of the seized material leads to a criminal prosecution, it may not be sufficient that a motion to suppress the evidence can be filed prior to the criminal trial").  Appellees may still pursue a suppression order, should they be indicted.

Having examined these factors, we find that even if Appellees had affirmatively moved to suppress in Judge Hughes's court based on anomalous jurisdiction, its exercise was not warranted under these circumstances.

Appellees assert two other grounds to show the district court had jurisdiction to enter its order.  First, Appellees cite several cases in which the media was the applicant for the unsealing of search warrant materials and jurisdiction was simply assumed.[4]

---

[3]In *Richey,* the district court had determined that the issue whether the appellants were entitled to an order granting the return of property was moot, and also held that a motion to suppress could not be granted because no criminal prosecution was pending, thus leaving the appellants without a procedural leg on which to stand.  *Richey,* 515 F.2d at 1242.

[4]*See In re Application of Newsday, Inc.,* 895 F.2d 74 (2d Cir.), *cert. denied sub nom.  Gardner v. Newsday, Inc.,* 496 U.S.

13

Each of these cases, however, involved motions to unseal, not conditional suppression orders contingent on the government's producing a warrant affidavit. Furthermore, each of the decisions regarding the access to warrant material arose in the district of seizure, and implicated no cross-jurisdictional concerns. None of these cases support the argument that a court in one district, which is neither the district of trial nor the district of seizure, has jurisdiction to issue a conditional suppression order based on a warrant issued in another district.

Second, Appellees cite two cases for essentially the same proposition: courts have a general supervisory power over records and files presented to them.[5] Both of these cases considered the

931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990) (appeal of decision by the district court, which had originally ordered search warrant application sealed, to release a redacted copy of the warrant application); *Baltimore Sun Company v. Goetz*, 886 F.2d 60 (4th Cir.1989) (appeal from district court's order denying a petition for writ of mandamus ordering a magistrate to unseal a search warrant affidavit); *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir.1989) (appeal of district court orders in two different districts denying requests to unseal search warrant materials after direct review of magistrate decisions in the respective districts); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir.1988) (appeal of decision by the district court in the district of seizure not to unseal affidavits and materials attached to search warrants issued by the court).

[5]*See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (stating that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes"); *In re Sealed Affidavit(s) To Search Warrants Executed on February 14, 1979*, 600 F.2d 1256, 1257 (9th Cir.1979) (noting that "courts have inherent power, as an incident of their constitutional function, to control papers filed with the courts within certain constitutional and other limitations").

14

question whether a court has the power to restrict access to documents properly filed with that court. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) involved a decision by the district court to restrict media access to tape recordings that had been entered into evidence in a criminal trial, until the defendants' appeal of the trial had been resolved. *In the Matter of Sealed Affidavit(s) To Search Warrants Executed on February 14, 1979,* 600 F.2d 1256 (9th Cir.1979) involved a decision by the district court, which had issued search warrants, to seal the master affidavit supporting the warrants. These cases do not provide an independent basis for jurisdiction apart from the federal rules, however, and we do not construe their holdings to give the district court in the instant case inherent power over the search warrant affidavit simply because he was briefly provided with the affidavit for an *in camera* inspection. To hold otherwise would allow any federal court in this nation to disrupt the proceedings of another court if it temporarily peruses a document within the other court's control.

IV. CONCLUSION

Based on the foregoing, we **REVERSE** the district court's ruling on the motion to quash the grand jury subpoenas and its *sua sponte* issuance of a conditional suppression order.

15